**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID L. STAUDT, | CASE NO. 1:13-cv-02904-YK-GBC |
| Plaintiff, | (JUDGE KANE) |
| v. | (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY, | REPORT AND RECOMMENDATION<br>TO VACATE THE DECISION OF<br>THE COMMISSIONER AND<br>REMAND FOR FURTHER |
| Defendant. | PROCEEDINGS |
| | Docs. 1, 12, 13, 17, 20, 21 |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff David L. Staudt for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). Plaintiff asserts disability as a result of mental impairments, including post-traumatic stress disorder ("PTSD") after serving in the Marines, when he was involved in multiple combat situations in Lebanon and witnessed the death of several fellow Marines. Plaintiff asserts that the administrative law judge ("ALJ") erred in evaluating the medical opinions of his

treating psychiatrists. The ALJ rejected four consistent opinions by multiple treating psychiatrists with established longitudinal relationships authored between April 19, 2010 and February 16, 2012 in favor of a single opinion by a state agency physician who never examined or treated Plaintiff issued on July 23, 2009. Under the particular facts of this case, the four consistent opinions by treating psychiatrists overwhelm the single opinion by the state agency physician, so the state agency physician's opinion does not provide substantial evidence to reject these opinions. Moreover, the passage of time and significant treatment that occurred after the state agency physician's opinion required the ALJ to independently interpret medical evidence and substitute her lay opinion for that of a medical professional, which is impermissible. Consequently, the ALJ's assignment of weight to the medical opinions and RFC assessment lacks substantial evidence.

Moreover, although Plaintiff filed an application for supplemental security income, which is not related to Plaintiff's date last insured of December 31, 2010, the ALJ generally limits her discussion to the medical evidence prior to Plaintiff's date last insured. She appears to discredit some of the evidence because it falls after Plaintiff's date last insured. She does not discuss any medical evidence after May of 2011, although she did not issue the decision until March 21, 2012. This precludes meaningful review. As a result, the Court recommends that Plaintiff's

appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings.

## II.    Procedural Background

On June 8, 2010, Plaintiff filed an application for DIB under the Act. (192-93). On June 8, 2011, Plaintiff filed an application for SSI under the Act. (Tr. 194-205). On October 29, 2010, the Bureau of Disability Determination Plaintiff's DIB application (Tr. 104-13), and Plaintiff filed a request for a hearing on December 16, 2010.  (Tr. 114-15). On February 13, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 36-89).  On March 21, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 19-35). On April 10, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 16-18), which the Appeals Council denied on September 12, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 4-9).

On December 2, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On April 24, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 12, 13). On May 1, 2014, the Court referred this case to the undersigned Magistrate Judge. On June 5, 2014, Plaintiff filed a brief in support of his appeal ("Pl. Brief"). (Doc. 17). On July 31, 2014, Defendant filed a brief in

response ("Def. Brief"). (Doc. 20). On August 13, 2014, Plaintiff filed a brief in reply. (Doc. 21). The matter is now ripe for review.

### III.     Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and requires only "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### IV.     Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. §

1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").    20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## V. Relevant Facts in the Record

Plaintiff was born on November 11, 1962 and was classified by the regulations as a younger individual through the date of the ALJ decision. 20 C.F.R. § 404.1563. (Tr. 28). Plaintiff has at least a high school education and past relevant work as a brick mason. (Tr. 28).

## A. Medical Records

Plaintiff received psychological treatment from Dr. Aida Rjepaj, M.D., and Dr. Alan Rohrer, M.D., during the relevant period. ((Tr. 566). Plaintiff established care with Dr. Rjepaj in 2007. He reported being "very hyperactive" and having a hard time slowing down, feeling jumpy and restless, racing thoughts, sleeping only 3-4 hours a night, speaking so fast that people could not understand him, periods of feeling down or depressed with little energy, feeling tired and, exhausted, having difficulty sleeping and mood swings as far back as he could remember. (Tr. 378).

He was observed writing in a pressured manner during the visit and he appeared somewhat elated and overly confident. *Id.* Dr. Rjepaj diagnosed Plaintiff with bipolar disorder II, hypomanic episode, and cocaine dependence, assessed him to have a global assessment of functioning ("GAF") GAF score of 50, and prescribed Depakote. (Tr. 379).

Plaintiff reported a decrease in his symptoms after being prescribed Depakote. Dr. Rjepaj noted that Plaintiff was "very content with the improvement and comments that taking the medication has made a big difference" and "his symptoms have improved remarkably since taking Depakote" (Tr. 374, 376). In May of 2008, Dr. Rjepaj noted that Plaintiff was doing well on medication and that symptoms improved "remarkably" since taking Depakote (Tr. 372).

However, in August of 2008, Plaintiff reported that he was feeling more down and that he fell asleep before remembering to take Depakote. (Tr. 370). Dr. Rjepaj observed that Plaintiff was ruminating. (Tr. 370). Dr. Rjepaj assessed mild, mixed symptoms and prescribed Zoloft. (Tr. 371). In October of 2008, Dr. Rjepaj noted:

> [D]oing relatively well and feels stable on the medication. His mood symptoms have overall ameliorated and the patient has only occasional and minor ups and downs. His thoughts are clear and the patient is able to focus and concentrate. The patient eats well but reports fragmented sleep. He experiences frequent dreams from the time he was in the service. The denies any side effects from the medication. There is no evidence of psychotic symptoms.

(Tr. 366).

In January of 2009, Plaintiff reported increased symptoms and problems with medication. (Tr. 364-65). Dr. Rjepaj noted:

> [R]eports presence of mood swings lately. He had a period of depression for 4 days lately, and now feels a bit more energized than usually. The patient reports that he stopped taking the zoloft 2 days ago, because he felt that it was causing mood instability. Also he stopped taking the trazodone, because he felt that it did not work for him and made him hyper instead. The patient had lab work on September 5th, indicating a depakote blood level of 49.3. He reports that is taking the medications regularly, but the last refill of his depakote was on 11/23. He still has depakote at home, which shouldn't be if he was taking it regularly. When confronted the patient with this fact, he indicated that he may be skipping his medications on occasions.

(Tr. 364). Plaintiff's speech was "slightly hyper verbal, mildly pressured." (Tr. 365). Dr. Rjepaj discontinued Plaintiff's Zoloft and trazodone and instructed him to take his Depakote regularly. (Tr. 365). The next week, Plaintiff reported continued mood swings, being overly active, jumpy, and hyperactive. (Tr. 363). Mental status examination noted a restricted range and intensity of affect and slightly hyperverbal speech. *Id.* Dr. Rjepaj increased Plaintiff's dose of Depakote. (Tr. 364). In February of 2009, Plaintiff continued experiencing mood swings, did not want to increase his dose of Depakote, and was prescribed Seroquel. (Tr. 363). On mental status examination, Plaintiff's mood was "mildly irritable, with congruent affect of restricted range and intensity," and his speech was "hyper verbal and pressured." (Tr. 362). On April 23, 2009, Plaintiff reported improvement of his mood swings on Seroquel. (Tr. 353). A mental status

examination revealed a neutral mood, but he appeared tired. (Tr. 354). Dr. Rjepaj noted that Plaintiff was "doing well overall and has no active mood symptoms at this time." (Tr. 354).

On September 4, 2009, Plaintiff reported to Dr. Rjepaj that he ran out of medications for the past 4-5 days and was experiencing mood swings (Tr. 463). Plaintiff admitted that his medication intake is erratic overall and indicated that he had difficulty remembering to take his medications.  (Tr. 463). Dr. Rjepaj noted mild mood instability due to being off medications (Tr. 464). On October 16, 2009, Dr. Rjepaj opined that Plaintiff's mood instability was "likely due to poor compliance with medications" (Tr. 458). Mental status examination indicated hyperactive and restless psychomotor behavior, a slightly elated mood with congruent affect of increased range and intensity, and hyperverbal and pressured speech. (Tr. 458).  Dr. Rjepaj increased Mr. Staudt's dose of Seroquel. (Tr. 459).

On January 5, 2010, Plaintiff established care with Dr. Rohrer. (Tr. 563). Plaintiff exhibited impaired judgment, impaired insight, agitation, anxiety, hyperactivity, hyper-alertness, restlessness, impulsiveness, and an inability to maintain attention and concentration during conversation (Tr. 566). Plaintiff reported mental problems after being discharged from the Marines because of trauma he was exposed to during combat in Beirut, Lebanon, nightmares, episodes of anxiety associated with palpitations, tachycardia, dyspnea, diaphoresis, a feeling

impending doom that occurred a couple of times a month, periods of depression lasting up to 4 days, during which he was withdrawn and stayed in bed, periods of being easily agitated, during which he became loud and energized and had trouble staying on one subject as well as racing thoughts,  difficulty getting along with people and consequently had lost jobs and been in fights and arrested. (Tr. 563-66). Dr. Rohrer diagnosed Plaintiff with bipolar affective disorder, depressed and moderate, panic disorder, and prolonged PTSD and assessed him to have a GAF of 42. *Id.*

Through February of 2010, Plaintiff reported to Dr. Rjepaj that he had been doing relatively well (Tr. 438, 451).

On March 8, 2010, Plaintiff was evaluated by Dr. Edward Dale, Psy.D. (Tr. 439-448). Dr. Dale observed that Plaintiff was extremely expressive and that when something angered him, he would become almost belligerent (Tr. 441). Plaintiff's speech was confusing and difficult to follow (Tr. 442). Dr. Dale further noted that Plaintiff's thought process was rambling/racing from one topic to another, with looseness of associations and flight of ideas, ideas of reference, below average intelligence, partial insight, and poor impulse control. (Tr. 441-443). He was easily distracted, and that he had a short attention span (Tr. 442-43). Dr. Dale determined that while Plaintiff's reporting of events was consistent with a PTSD diagnosis, Plaintiff's manic state at the time made it difficult for Dr. Dale to fully assess the

presence of PTSD (Tr. 447). Dr. Dale found that Mr. Staudt experienced chronic symptoms of persistent re-experiencing of a traumatic event, persistent avoidance of stimuli associated with the trauma and numbing of general significant distress or impairments in social, occupational, or other important areas of functioning. (Tr. 444). Dr. Dale diagnosed post-traumatic stress disorder ("PTSD").13 (Tr. 445). He also opined that Mr. Staudt was "clearly disabled from his Bipolar Disorder" and was unable to maintain gainful employment. (Tr. 448).

Mental status examinations with Dr. Rohrer and Dr. Rjepaj through March and April of 2010 indicated an irritable mood with congruent affect, a restricted range and intensity, and slightly pressured speech, impaired judgment, anxiety with a noticeable change in energy levels, hyperactivity, and restlessness. (Tr. 435, 561). On April 19, 2010, Dr. Rohrer opined that Plaintiff's PTSD may not necessarily prevent Plaintiff from working, but in combination with his bipolar disorder, his medication and other problems, there is an interference with Plaintiff's ability to work (Tr. 605). Plaintiff's prescription of Depakote was increased, he was prescribed Celexa.. (Tr. 432-35, 562). On April 27, 2010, Dr. Rjepaj opined that Plaintiff was "doing better today and seems calmer. He is taking the medication as prescribed and reports that it helps him feel better." (Tr. 431). Plaintiff reported improved symptoms. (Tr. 431).  In June of 2010, Dr. Rjepaj noted that Plaintiff was "doing relatively okay and has no active mood symptoms."

(Tr. 426). However, he continued to experience PTSD symptoms, as he reported occasional nightmares followed by making security checks in his home. (Tr. 425).

Plaintiff improved through the end of 2010, but on December 27, 2010, Plaintiff reported to Dr. Rjepaj that he went to the emergency room after he stopped taking his medications and experienced a rebound of anxiety and mood symptoms (Tr. 657-58). Dr. Rjepaj noted that Plaintiff's medications were refilled and that Plaintiff "has been on his medications for 2 weeks now and is doing better" (Tr. 658).

On February 10, 2011, Dr. Rjepaj noted:

> There are no major changes reported since the last visit here. The patient states that he is getting along better with his father lately. Finances r as before, remain a concern for the patient and he continues to work on his disability claim. His mood remains unchanged, with the typical ups and downs, which are usually triggered by situations. The patient reports that he has nightmares on and off and at times becomes paranoid when he hears noise at night. On such situations, he becomes hyperalert and hypervigilant. The patient states that he always had these issues since time of service, but lately they have become slightly more intense. He eats well, while sleep is erratic as described above. Energy level fluctuates. There are no psychotic symptoms. The patient denies suicidal or homicidal ideations.

(Tr. 654). Dr. Rjepaj noted "an exacerbation of the PTSD symptoms lately…. I increased today the dose of seroquel to 150mg bid to address the current mood/PTSD symptoms." (Tr. 655).

On May 23, 2011, Plaintiff reported to Dr. Rjepaj:

> Mood continues to have ups and downs triggered by stress. When left alone, the patient feels better, but gets irritable when repeatedly provoked by sister.

Sleeping remains unchanged, disrupted by nightmares. Hypervigilance symptoms are still present.

(Tr. 644). Dr. Rjepaj noted that Plaintiff "continue[d] to deal with several stressors at this time, which cause fluctuations in his mood. I offered the patient to further adjust his medications for a better control of his mood symptoms, but he declined, for fear of side effects." (Tr. 645). On July 20, 2011, Plaintiff reported the same symptoms, with an increase in symptoms "over the past week." (Tr. 639). Dr. Rjepaj noted a "recent exacerbation of his PTSD symptoms" and increased his seroquel. (Tr. 640-41).

## B. Opinion Evidence

On July 23, 2009, state agency physician Dr. Richard W. Williams, Ph.D., reviewed Plaintiff's file and issued an opinion. (Tr. 386-401). Dr. Williams opined that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, and mild limitations in maintaining social functioning and activities of daily living (Tr. 396). Dr. Williams concluded that Plaintiff is capable of performing simple routine work when compliant with treatment (Tr. 401).

On April 19, 2010, Dr. Rohrer opined that Mr. Plaintiff had PTSD "that was manifested as a result of his combat experience" in the U.S Marine Corps from 1982-1983. (Tr. 605). He was exposed to a hostile and threatening environment during two tours of duty and developed an anxiety disorder while still on active duty. Plaintiff also had bipolar disorder that was likely exacerbated by PTSD and

was consequently more difficult to manage. Dr. Rohrer opined that Plaintiff's PTSD, in addition to bipolar disorder, the medications he must take, and his "inattentive disorder" markedly interfered with his ability to obtain or maintain employment. *Id.*

On July 13, 2010, Dr. Rohrer completed a Multiple Impairment Questionnaire form. (Tr. 572-79). Dr. Rohrer's prognosis was "fair to poor" and based off observations of Plaintiff's labile mood, excessive anger, poor impulse control, difficulty staying on topic, loudness, excessive energy, racing thoughts, anxiousness, nightmares, palpitations and dyspnea (Tr. 572). His symptoms were constantly severe enough to interfere with his attention and concentration. (Tr. 577). Dr. Rohrer opined that Plaintiff was incapable of tolerating even low work stress because of frequent arguments with family and friends and a history of getting into fights with others. *Id.* Dr. Rohrer further opined that Plaintiff could sit for only zero to one hour, could stand for only three hours, and would need to take unscheduled breaks "at least hourly" (Tr. 575-77). He opined that Plaintiff would be absent from work more than three times a month as a result of his impairments or treatment. (Tr. 578).

On May 29, 2011, Dr. Rjepaj completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 624-31). Dr. Rjepaj noted that Plaintiff exhibited symptoms including irritability, anxiety, hyperactivity, nightmares, and an inability

to get along with others.   (Tr. 626). Dr. Rjepaj opined that Mr. Staudt was markedly limited (defined as effectively precluded) in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and, respond appropriately to changes in the work setting. (Tr. 627-628). Dr. Rjepaj further opined that Plaintiff would be absent from work more than three times a month (Tr. 631).

On February 9, 2012, Dr. Rohrer completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 708-15). Dr. Rohrer diagnosed Plaintiff with bipolar disorder, PTSD, and cocaine dependence (Tr. 708). Dr. Rohrer indicated that the date of the most recent exam was February 6, 2012 and that the frequency of Plaintiff's treatment is four to five times a year (Tr. 708). Dr. Rohrer indicated that clinical findings support his determination that Plaintiff is disabled, specifically sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating,

suicidal ideation, oddities of thought, perception, speech, or behavior, social withdrawal or isolation, illogical thinking or loosening of associations, decreased energy, manic syndrome, intrusive recollections of a traumatic experience, persistent irrational fears, generalized persistent anxiety, and hostility and irritability. (Tr. 709).

Dr. Rohrer opined that Mr. Staudt was markedly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain ordinary routine without supervision; complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and, respond appropriately to changes in the in the work setting. (Tr. 711-712). Dr. Rohrer opined that Plaintiff's condition is life-long and that Plaintiff is not able to return to work (Tr. 708). Furthermore, Dr. Rohrer opined that Plaintiff was incapable of even low stress work and would be absent more than three times a month. (Tr. 714-15).

## C. ALJ Findings

On March 21, 2012, the ALJ issued the decision. (Tr. 30). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 20, 2007, the alleged onset date. (Tr. 24). At step two, the ALJ found that Plaintiff's bipolar disorder, posttraumatic stress disorder and a history of cocaine dependence were medically determinable and severe. (Tr. 24). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 24). The ALJ found that Plaintiff had the RFC to perform work at all exertional levels, but needed to avoid loud or very loud noise intensity and was limited to simple unskilled work that required no more than occasional interaction with the public and coworkers. (Tr. 26). At step four, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 28). At step five, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 29). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits.

## VI.      Plaintiff Allegations of Error

### A.      Evaluation of the medical opinions

Plaintiff asserts that the ALJ erred in evaluating the medical opinions. The ALJ rejected four consistent opinions by multiple treating sources with established longitudinal relationships authored between April 19, 2010 and February 16, 2012 in favor of a single opinion by a state agency physician who never examined or

treated Plaintiff issued on July 23, 2009. The ALJ did not state the weight assigned

to Dr. Rohrer's opinions, noting instead that:

> [T]he opinions rendered by Dr. Rohrer are clearly overstated in comparison
> to his treatment notes and examination findings. It appears that Dr. Rohrerr
> based his opinions on the claimant's complaints rather than the true clinical
> findings. Moreover, these assessments were obtained by claimant's Counsel
> in support of his application for disability benefits.

(Tr. 28). With regard to Dr. Rjepaj, the ALJ wrote:

> In May 2011, Dr. Rjepaj, who sees the claimant 4-5 times a year, rated the
> claimant with a GAF of 55, rated him incapable of low stress work and
> being absent more than 3 times a month, and with marked restriction in
> performing at a consistent pace, maintaining regular attendance, getting
> along with others, maintaining socially appropriate behavior and responding
> to work changes (Exhibit 17F). The undersigned finds that the GAF of 55 is
> internally inconsistent with marked mental restrictions and the fact that the
> claimant is incapable of even low stress work. In addition, the marked
> mental restrictions are overstated in comparison to the clinical record and
> treatment history. Therefore, the opinions of Dr. Rjepaj are accorded only
> partial weight.

(Tr. 28).

An ALJ must weigh medical opinions in making an RFC assessment. The

social security regulations state that when the opinion of a treating physician is

"well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case

record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2).  Section

404.1527(c) establishes the factors to be considered by the ALJ when the opinion

of a treating physician is not given controlling weight. Under subsections (c)(1)

and (c)(2), the opinions of treating physicians are given greater weight than opinions of non-treating physicians and opinions of examining physicians are given greater weight than opinions of non-examining physicians, as discussed above. Section 404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship. Subsection 404.1527(c)(3) provides more weight to opinions that are well supported, which means that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." Subsection 404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Subsection 404.1527(c)(5) provides more weight to specialists, and subsection 404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion."

In *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), the Third Circuit set forth the standard for evaluating the opinion of a treating physician, stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer [v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d

Cir.1994);  *Jones,* 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d
Cir.1989);   *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988);
*Brewster*, 786 F.2d at 585.  The ALJ may choose whom to credit but "cannot
reject evidence for no reason or for the wrong reason."  *Plummer,* 186 F.3d
at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The
ALJ must consider the medical findings that support a treating physician's
opinion that the claimant is disabled.  See *Adorno*, 40 F.3d at 48.  In
choosing to reject the treating physician's assessment, an ALJ may not make
"speculative inferences from medical reports" and may reject "a treating
physician's opinion outright only on the basis of contradictory medical
evidence" and not due to his or her own credibility judgments, speculation or
lay opinion.  *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d
405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318.

Here, the passage of time required the ALJ to make "speculative inferences
from medical reports" and may rejected the opinions "due to his or her own
credibility judgments, speculation or lay opinion."  *Id.* at 317-318. The Court
acknowledges that:

> [B]ecause state agency review precedes ALJ review, there is always some
> time lapse between the consultant's report and the ALJ hearing and decision.
> The Social Security regulations impose no limit on how much time may pass
> between a report and the ALJ's decision in reliance on it.

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). However, the
absence of a time limit in the Social Security regulations does not empower the
ALJ to independently interpret objective evidence to supplant the opinion of a
treating physician. The Third Circuit has explained:

> By independently reviewing and interpreting the laboratory reports, the ALJ
> impermissibly substituted his own judgment for that of a physician; an ALJ
> is not free to set his own expertise against that of a physician who presents

competent evidence.  Again, if the ALJ believed that Dr. Scott's reports were conclusory or unclear, it was incumbent upon the ALJ to secure additional evidence from another physician.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

Here, through the date of Dr. Williams' opinion, Plaintiff was treated only with Dr. Rjepaj. *Supra.* Plaintiff frequently reported improvement, and the most recent record prior to Dr. Williams' opinion indicated that Plaintiff was "doing well overall and has no active mood symptoms at this time." (Tr. 354, 374, 376). The only objective findings on examination prior to Dr. Williams' opinion were writing in a pressured manner, being somewhat elated and overly confident, hyperverbal and pressured speech, "mildly irritable" mood, and a restricted affect (Tr. 362-65).

Plaintiff subsequently deteriorated. Objective findings through the date of the ALJ decision included hyperactive and restless psychomotor behavior, a elated mood with congruent affect of increased range and intensity, hyperverbal and pressured speech, impaired judgment, impaired insight, agitation, anxiety, hyper-alertness, restlessness, impulsiveness, an inability to maintain attention and concentration during conversation, a GAF of 42, thought process that was rambling/racing from one topic to another, with looseness of associations and flight of ideas, ideas of reference, below average intelligence, partial insight, and

poor impulse control, an irritable mood with congruent affect, and a restricted range and intensity. (Tr. 435, 441-443, 458, 561, 566).

Consequently, the passage of time required the ALJ to independently interpret a significant portion of the relevant evidence. Thus, it "was incumbent upon the ALJ to secure additional evidence from another physician." *Id.* Unlike *Chandler,* the passage of time in this case covered a period of three years. *Supra.* Moreover, unlike *Chandler*, the evidence submitted over the three year period indicated significant treatment and multiple objective findings that corroborated Plaintiff's claims. *Supra.* Thus, the passage of time, the content of the records, and the failure of the ALJ to secure a more recent state agency opinion required the ALJ to impermissibility independently interpret objective evidence and substitute her lay opinion.

The Court further acknowledges that a state agency reviewing opinion may provide substantial evidence for the ALJ to reject a treating source opinion. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). However, substantial evidence is considered in relationship to other evidence. As the Third Circuit has explained:

> [O]ur decisions make clear that determination of the existence vel non of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by counterveiling evidence. Nor is evidence substantial if it is overwhelmed by other evidence—

particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Here, the state agency reviewing opinion was "overwhelmed" by four opinions "offered by treating physicians." *Id.* Thus, it did not provide substantial evidence to the ALJ's RFC assessment or assignment of weight to the medical opinions under the facts of this particular case.

Moreover, the ALJ discredited evidence after March of 2010 on the ground that it came after Plaintiff's date last insured. (Tr. 20-28). The ALJ also limited her conclusions to Plaintiff's date last insured. For instance, the ALJ concluded that "the record shows that the claimant's symptoms were adequately controlled from the amended disability date through at least the date last insured." (Tr. 27). The ALJ used this as a basis to reject Dr. Rohrer's opinion. (Tr. 28).

However, Plaintiff's date last insured is irrelevant to his eligibility to supplemental security income. Santos v. Colvin, 3:13-CV-1612, 2014 WL 5474576, at *11 (M.D. Pa. Oct. 28, 2014) ("SSI is a needs-based program, and eligibility is not limited based on an applicant's date last insured"). The ALJ's failure to discuss subsequent evidence precludes meaningful review of Plaintiff's eligibility for SSI and the assessment of later opinions. As the Third Circuit has explained:

> [T]he Secretary must "explicitly" weigh all relevant, probative and available evidence. *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979); *see also Brewster v. Heckler,* 786 F.2d 581, 584 (3d Cir.1986); *Cotter,* 642 F.2d at 705. The Secretary must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. *Brewster,* 786 F.2d at 585. The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects. *Stewart v. Secretary of H.E.W.,* 714 F.2d 287, 290 (3d Cir.1983)

*Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504-05 (3d Cir. 2009) ("The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review") (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).

This explanation requirement is particularly important for medical opinions. Under the Regulations, 20 C.F.R. 404.1527(c) states that the ALJ "will evaluate every medical opinion we receive." *Id.* There is a heightened requirement in Section 1527(c)(2), which applies only to treating physicians. Section 1527(c)(2) states that ALJs "will *always give good reasons* in [the] *notice of determination or decision* for the weight we give your treating physician's opinion." *Id.* (emphasis added). *See also Ray v. Colvin*, 1:13-CV-0073, 2014 WL 1371585, at *21 (M.D. Pa. Apr. 8, 2014) ("The cursory manner in which the ALJ rejected Dr. Jacob's opinions runs afoul of the regulation's requirement to " give good reasons" for not crediting the opinion of a treating source upon consideration of the factors

listed above. While there may be sufficient evidence in the record to support the ALJ's ultimate decision that Plaintiff was not under a disability, and, thus, the same outcome may result from remand, the court cannot excuse the denial of a mandatory procedural protection on this basis.").  The ALJ's failure to properly the evaluate the evidence after Plaintiff's date last insured precludes the Court from concluding that she providing "good reasons." *Id.*

Finally, the ALJ misconstrued the evidence that allegedly supported her opinion. The ALJ wrote that:

> State agency opinions from July and October 2010 reveal that the claimant was capable of at least simple routine work with medication compliance (Exhibit 5F); that the claimant had mild restrictions with activities of daily living and social interaction, and moderate restrictions in concentration, persistence and pace (Exhibit 4F); and that the record lacked sufficient evidence as of October 2010 to assess his mental limitations (Exhibit 14F). These opinions are given appropriate weight in that they are consistent with the claimant's improvement with medication compliance and the fact that he has not required ongoing counseling or inpatient treatment.

(Tr. 28). First, the state agency opinion in October 2010 did not reveal that Plaintiff was capable of any work; the opinion declined to address Plaintiff's activities of daily living, maintaining social function, or concentration, persistence, and pace. (Tr. 602). The October 2010 opinion states that Plaintiff "did not complete ADLs necessary to determine severity of mental impairment." (Tr. 604). Dr. Small concluded that there was "insufficient evidence" to make a determination of Plaintiff's medical disposition. (Tr. 592). Moreover, the opinion was limited to the

period of time before March 31, 2010, Plaintiff's date last insured, because he had not yet applied for SSI. (Tr. 592). Absolutely no aspect of the October 2010 opinion supports the ALJ's conclusion or indicated that he could do simple routine work. Thus, the ALJ's characterization of the October 2010 opinion misconstrues the evidence. As the Third Circuit has explained:

> Since the ALJ did not consider all the relevant record evidence, and, more significantly, misconstrued the evidence considered, his conclusion that Cotter's impairment did not prevent the performance of his past relevant work, which is based on the ALJ's understanding of the physical demands of welding, must be reconsidered.

*Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981).

Thus, the Court recommends remand for the ALJ to properly evaluate the treating source opinions and assess Plaintiff's RFC. Because the Court recommends remand on these grounds, the Court declines to address Plaintiff's other allegations of error.

## VII.    Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.    The decision of the Commissioner of Social Security denying Plaintiff's social security disability insurance and supplemental security income benefits be

vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2.      The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: March 27, 2015                    _____s/Gerald B. Cohn_____
                                                         GERALD B. COHN
                                              UNITED STATES MAGISTRATE JUDGE